David M. CLARK *v.* SUPREME COURT COMMITTEE
ON PROFESSIONAL CONDUCT

94-1293                                                    898 S.W.2d 446

Supreme Court of Arkansas
Opinion delivered May 22, 1995

598

*Clarence W. Cash*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *John C. Calhoun, Jr.*, for appellee.

ANDREE LAYTON ROAF, Justice. Appellant David M. Clark appeals from a decision of the Supreme Court Committee on Professional Conduct (Committee). The Committee unanimously found Clark violated Rules 1.1, 1.3, and 8.4(d) of the Model Rules of Professional Conduct and suspended the appellant from the practice of law for a period of six months. We affirm.

In August of 1989, Mrs. Frances Paradiso was injured while visiting a construction site. Mrs. Paradiso and her husband had hired a contractor to construct a home. While visiting the construction site, Mrs. Paradiso leaned against a porch railing which collapsed; she broke her arm and wrist, injured her shoulder, and suffered a shock to her nervous system.

Approximately two years later, the Paradisos hired appellant Clark to represent them in a personal injury action against Vir-

gil Griffin, the general contractor. On February 25, 1991, a complaint was filed in Sharp County Circuit Court against Virgil Griffin, d/b/a Lazy Acres Construction. On September 24, 1991, the defendant filed a motion to dismiss because the complaint was filed in the wrong county and the Sharp County Circuit Court did not have jurisdiction. Appellant Clark admits receipt of the motion to dismiss; however, unbeknownst to appellant, an Order of Dismissal was entered on September 27, 1991. Clark learned of the dismissal from another attorney in June or July of 1993, after the claim was barred by the three year statute of limitations. The Paradisos maintain they were never advised of the dismissal and the suit was never refiled in the proper county.

Upon receipt of the September 24 motion to dismiss, Clark contacted the Paradisos and verified that the suit had been filed in the wrong county. The Paradisos have a Hardy, Arkansas mailing address, and the majority of Hardy is located in Sharp County; however, the Paradisos actually live in Fulton County. Clark testified he informed the Paradisos that the lawsuit needed to be refiled in Fulton County and that he thought they still had a lawsuit. Appellant Clark stated that he "didn't tell them that I would, but I didn't tell them I wouldn't" refile the lawsuit. Mrs. Paradiso testified Clark informed her he was going to refile the lawsuit in Fulton County.

The record indicates the Paradisos continued to contact the appellant's office during 1991, 1992, and 1993. At least some of the calls concerned a separate matter regarding the Paradisos' land. Appellant Clark suggested the Paradisos contact another attorney, Larry Kissee, regarding their land. However, the Paradisos continued to contact the appellant regarding the status of their complaint against Griffin. Clark testified that in "most of our conversations they would want to know what was going on and I would tell them that I hadn't gotten any more response back from the private investigator and that I still wanted them to hire another attorney."

The appellant asserts that due to his repeated advice to the Paradisos to hire another attorney and his repeated attempts to express the fact that he no longer wanted to represent the Paradisos, the Court should find that the Committee's decision was clearly erroneous. We review the Committee's action *de novo*

and affirm unless it is clearly against the preponderance of the evidence. *Finch* v. *Neal*, 316 Ark. 530, 873 S.W.2d 519 (1994); *Muhammed* v. *Arkansas Supreme Court Committee on Professional Conduct*, 291 Ark. 29, 722 S.W.2d 280 (1986). Further, the Committee's factual determinations are sustained on appeal unless clearly erroneous because the Committee is in the superior position to determine the credibility of witnesses and weigh the preponderance of the evidence. *Colvin* v. *Committee on Professional Conduct*, 309 Ark. 592, 832 S.W.2d 246 (1992). In the instant case, we cannot say the Committee's decision was clearly erroneous.

The Committee found Clark violated Rules 1.1, 1.3, and 8.4(d) of the Model Rules of Professional Conduct. Rule 1.1, Competence, provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.3, Diligence, provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." Finally, Rule 8.4, Misconduct, provides in part: "It is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice."

Appellant Clark admitted that he knew there was a danger the case could be dismissed at any time after the motion to dismiss was filed. Clark testified that after he received the motion to dismiss the "mistake I made at that point probably was not just flat out telling Mr. and Mrs. Paradiso that as far as I was concerned our relationship was ended, and they were going to have to refile, and they should contact another attorney." In addition, he stated "the mistake I made on the front end was not just saying, when the Motion to Dismiss was filed, you all need to go find another lawyer, instead of trying to continue to do something." Further, Clark testified that he "should have withdrawn in September . . . that's what I should have done." However, Clark admits he was the attorney of record and all his discovery had been "informal."

In its letter opinion to Clark, the Committee stated "You testified that you continued to encourage the Paradisos to seek other counsel, but [you] never sent them a letter to that effect or that you felt their best interests would be served by withdraw-

ing. Neither did you respond to the Motion To Dismiss believing you could request a non-suit and refile." Even in his brief on appeal, Clark principally asserts he "encouraged" and "suggested" that the Paradisos hire another attorney. Clark did testify that he told the Paradisos they needed to hire another attorney; however, he continued to "work" on the case and simply informed the Paradisos that he had not received any response from the private investigator.

■ Based upon the findings of fact, the Committee could reasonably conclude the appellant violated Model Rules 1.1, 1.3, and 8.4(d). In fact, the Comment to Rule 1.3 provides in part:

> Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. . . . Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.

The appellant essentially ignored his clients' case for nearly two years after the defendant's motion to dismiss was filed. Further, the appellant was aware that the motion to dismiss was well-founded. Although he suggested the Paradisos should obtain another attorney, Clark continued to "work" on the matter and discussed his "progress" with the Paradisos.

■ For his second point, the appellant asserts the suspension of his law license is excessive discipline considering the facts of this case. The appellant urges the Court to consider the guidelines for sanctions discussed by Justice Glaze in his concurring opinion in *Colvin* v. *Committee on Professional Conduct*, 309 Ark. 592, 832 S.W.2d 246 (1992). In *Colvin*, however, we noted that in the context of criminal law we will not reduce or compare sentences that are imposed within statutory limits. *Id.* Further, we noted that in the civil context of damage awards, a comparison of awards made in other cases cannot be relied on as a measure of excessiveness. *Id.* Consequently, because the Committee's action was within the range of sanctions for a violation of a provision of the Model Rules, we affirmed the Committee's decision. *Id.*

■  Section 7(A) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law provides that when the Committee finds that an attorney has violated any provision of the Model Rules, the Committee is authorized to suspend the attorney for a period up to but not exceeding one year. Because the Committee's action is within the range of sanctions authorized for a violation of a provision of the Model Rules, the decision of the Committee is affirmed.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. By its decision today, this court continues its callous disregard of a practicing attorney's due process rights when imposing serious sanctions against him or her. While Mr. Clark failed to act with due diligence and competence in allowing a statute of limitations to run on the Paradisos' tort claims, the Professional Conduct Committee and this court is clearly wrong in suspending Clark's license for the ethical violation. At most, Clark's action amounts to malpractice which has caused serious harm to the Paradisos, and Clark should be determined liable for his negligent action. Instead, the Committee and this court prevents Clark from practicing law, thereby making it even more difficult for the Paradisos to obtain recompense.

Clark, too, has also been made subject to disparate treatment compared to that imposed previously for similar misconduct. For example, in *Walker* v. *Supreme Court of Arkansas Committee on Professional Conduct*, 275 Ark. 158, 628 S.W.2d 552 (1982), the attorney had failed to file a personal injury suit arising from an automobile accident within the statute of limitations period. This court upheld the Committee's imposition of a "caution" sanction. The court stated the following:

> It is also to be noted that the citation levied by the Committee was a "caution" rather than a "reprimand." We believe such action is not incommensurate with the neglect of appellant Walker as reflected by the evidence in his proceeding.

In a concurring opinion in *Colvin* v. *Committee on Professional Conduct*, 309 Ark. 592, 832 S.W.2d 246 (1992), I pointed out

that, without clear guidelines for imposing sanctions, the Committee, considering the large number of cases it hears and decides, innocently runs the risk of imposing different sanctions to situations where the same or similar misconduct may be involved.[1] Again, when comparing the facts and decision in *Walker*, the Committee's suspension of Clark's license is much too severe.

In my mind, the most serious question raised by this court's decision is why is this court so reluctant to define the court's permissible sanctions? Shouldn't attorneys, who have violated the canons, know what punishment can be imposed? Shouldn't the more serious sanctions of suspension and disbarment be reserved for those attorneys committing intentional and wilful acts such as defalcation or felonies as opposed to acts of negligence? Should an attorney who has committed repeated canon violations, regardless of intent or wilfulness, be subject to the more serious sanctions? If so, shouldn't this court set forth the standards which would trigger when those serious sanctions apply?

This court's failure to define its sanctions gives the court and its Committee unbridled discretion when imposing sanctions in any given case regardless of the misconduct involved. This is wrong.

In conclusion, I mention that the issue concerning sanctions and this court's woeful refusal to define them was raised over two years ago in the *Colvin* case, but nothing has been forthcoming to address this matter. In fact, there are some court members and attorneys who, for whatever reason, do not think it wise to define sanctions. Frankly, I can think of no valid reason why they should not be defined. Nonetheless, until or unless the

---

[1] Although not suggested as a complete or final answer, I listed in my concurring opinion certain guidelines that might be considered. Those are as follows:

(1) WARNING - to be given when there is some reasonable question as to whether there was in fact a violation.

(2) CAUTION - to be given when there has been a violation but no irreparable harm.

(3) REPRIMAND - to be given when there has been a violation with irreparable harm.

(4) SUSPENSION - to be imposed when the violation is intentional or includes moral turpitude.

Arkansas Bar Association, itself, decides the issue defined here-inabove is worthy of discussion, this court, no doubt, will continue its custom to do nothing on the matter. I will, however, continue to write, hoping sanctions for legal misconduct will eventually be defined. Fairness and due process require it.